Gen. 35]                                                                                     35

## COMPTROLLER

### RETIREMENT SYSTEMS – COLLEGES AND UNIVERSITIES – ADMINISTRATION OF OPTIONAL RETIREMENT PROGRAM

May 26, 1995

*Mr. Edwin G. Greenberg*
*Director, Central Payroll Bureau*

You have requested our opinion on several questions related to the Optional Retirement Program ("ORP"). Your specific questions are as follows:

"1.   Who is the legally responsible sponsor of the optional retirement program, both employer and employee deductions? What is the precise duty of the sponsor in monitoring the program on an ongoing basis (particularly compliance with IRS requirements)?

"2.   Must the Comptroller implement the expansion of [the] Optional Retirement Program at a specific time if there is no agency currently responsible for the expanded program under IRS 403(b) monitoring requirements?

"3.   Is Central Payroll entitled under a statute, regulation or executive order to reimbursement of expenses incurred for support of the optional retirement program?

"4.   To what extent are Central Payroll, the Retirement Agency or the employing colleges authorized to release employee information to optional retirement vendors such as social security number, home address and phone, and the amount of other 403(b) voluntary deductions?

"5.   Which employees of the college and university system are eligible for election of voluntary deductions to the new optional retirement vendors?  Does an eligible employee have to formally elect to participate in optional retirement?

"6. If the answers to the above questions cannot be completely definitive, what State legislation is required to insure that the IRS regulations for 403(b) plans are meticulously followed, monitored, and enforced?"

For the reasons stated below, we conclude as follows:

1.    The answer to your first question begins with an identification of the limited role of the Central Payroll Bureau: Central Payroll is *not* in any sense the "sponsor" of the ORP or the deductions under it. Indeed, given Central Payroll's limited role, we do not think it necessary for purposes of this opinion to try to identify any single "sponsor" on which ultimate compliance responsibility reposes; in fact, responsibility for administration of the ORP is divided among State entities and the designated vendors. For Central Payroll's purposes, however, it may look to the employing institution as the "sponsor" of deductions from employees at that institution. Thus, if Central Payroll has a concern about an individual's deductions – for example, that the amount of the deductions appears to be so high as to exceed limits imposed under the Internal Revenue Code ("I.R.C.") – Central Payroll should inquire of the employing institution. The institution, in turn, may pass along the inquiry to an ORP vendor that receives deductions from the employee. If need be, the State Retirement Agency may take necessary action to require a vendor to carry out its contractual obligation to properly solicit and process funds under the program and to monitor compliance with I.R.C. requirements.

2.    Because responsibilities for administering a lawful program are sufficiently laid out in statute, there is no basis for any delay in the implementation of the expanded ORP called for under Title 30 of the State Personnel and Pensions ("SPP") Article, Maryland Code.

3.    The Central Payroll Bureau is entitled to reimbursement of its costs, as provided in the State budget.

4.    With the consent of any employee, Central Payroll, the Retirement Agency, or the employing institution may release the employee's social security number, home address and phone number, and the amount of other voluntary deductions under I.R.C. §403(b).    For example, a participating employee necessarily consents to the disclosure of this information to the designated vendor (or vendors) selected by the employee. Without employee

consent, however, the agencies may release only the business address of an employee.

5.      An employee is eligible to elect to make voluntary deductions to the new ORP vendors if the employee meets the eligibility criteria in SPP §30-301 and has elected to participate in the State contribution portion of the program. An eligible employee must formally elect to participate in the ORP by filling out the required enrollment forms.

6.      No gap in current State law prevents the administration of an ORP that complies with all of the requirements of the I.R.C. If a more detailed description of monitoring responsibilities were thought desirable, the Board of Trustees of the Retirement Systems may adopt additional requirements by regulation.

# I

## Background

The ORP is an elective retirement program established by SPP Title 30. The program allows eligible employees of the State's public colleges to waive participation in the regular retirement or pension system, which are defined benefit plans, in exchange for participation in the ORP, which is a defined contribution program.[1]

Under SPP §30-205, the State contributes 7.25% of the salary of a participating employee to an annuity contract or shares in a regulated investment company (mutual fund), as determined by the employee. *See* SPP §§30-101(b) and 30-205(c). Both types of investment qualify for tax benefits if the program or arrangement satisfies the conditions of I.R.C. §403(b). The ORP unquestionably is intended to be a §403(b) program, commonly referred to as a "tax-sheltered" or "tax-deferred" annuity. *See* SPP §30-205(d).

---

[1] A "defined benefit" plan promises a specific annuity benefit calculated by a formula. A defined contribution plan or program generally links benefits to the investment performance of periodic contributions by an individual to one or more investment options. The employer bears the risk of investment gain or loss in a defined benefit plan; the employee bears the risk in a defined contribution program.

## II

### "Sponsorship"

The ORP was enacted in Chapter 556 of the Laws of Maryland 1975. The original ORP gave all administrative authority to the applicable governing boards of the eligible institutions:

> A governing board adopting an optional retirement program may provide for the administration of the system and may authorize the performance of whatever functions as may be necessary for these purposes.

Former Article 77, §217(h) of the Code. *See generally* Opinion No. 92-024 (August 13, 1992) (unpublished) (institutions have authority to select investment options for program).

The structure of the program was changed by Chapter 428 of the Laws of Maryland 1993. Chapter 428 gave overall authority to the Board of Trustees of the Retirement Systems, to be carried out by the State Retirement Agency. Under SPP §30-201(e)(1), "[t]he Board of Trustees shall administer the program to the extent provided in this title." In addition, the Board of Trustees has broad authority to adopt "regulations that are necessary to carry out this title." SPP §30-203.

More specifically, the Board of Trustees is given the authority to select additional offerors of annuity contracts and to approve the "form and contents" of annuity contracts with both the old and new vendors. SPP §30-202.[2] One of the selection criteria to be applied by the Board was "the ability of the company to provide for suitable rights and benefits under the annuity contracts." SPP §30-202(c)(4).

The statute specifically limits the administrative responsibility of the Board of Trustees, however. Under SPP §30-204, the Board of Trustees "is not responsible for":

---

[2] Until Chapter 428 opened up the ORP to competition, annuities were available from only a single vendor, the Teachers' Insurance Annuity Association/College Retirement Equities Fund, TIAA-CREF. *See* Joint Committee on Pensions, *Report of the 1992 Interim* 11 (December 1992).

> (1) retirement counselling ...;
>
> (2) preparing or disseminating information with respect to an annuity contract ...;
>
> (3) enrolling, terminating, or retiring a participating employee.

The last of these items − "enrolling, terminating, or retiring a participating employee" − is the responsibility of the employing institution: "With respect to a particular employee who is employed by an employing institution or an institution over which the employing institution has administrative authority, the employing institution shall administer the participating employee's enrollment, termination, or retirement." SPP §30-210.[3] Thus, when an eligible employee enrolls in the ORP by completing the required forms, the employing institution is responsible for instructing Central Payroll on the proper tax reporting of the item in question. *See* SPP §§30-303(b) and 30-304(b). The employing institution gives Central Payroll instructions about the deduction as part of the institution's administration of "enrollment." In that limited sense, the employing institution is the "sponsor" of the deduction.

As a consequence, Central Payroll is entitled to deal with the ORP deduction just as it does with other deductions that Central Payroll makes because it was so instructed by the employer. If Central Payroll becomes aware of any problems associated with the deduction, be they disputes among "designated companies" as to where the money should go or uncertainty as to the amount of any deduction, Central Payroll should seek clarification from the institution.

---

[3] The "employing institutions" are the following:

    (1)   The University of Maryland System;
    (2)   Morgan State University;
    (3)   St. Mary's College; and
    (4)   The Maryland Higher Education Commission with respect to eligible employees of the Commission or any community college or regional community college established under Title 16 of the Education Article.

SPP §30-101(e).

We need not address in this opinion the extent to which the employing institutions have a duty, in your phrase, "to monitor the program on an ongoing basis." The statute clearly contemplates that much of the activity associated with the ORP will occur through direct interaction between the vendor and the employee selecting that designated company. This interaction will occur both for the State contribution and for additional, voluntary contributions.[4] Indeed, under SPP §30-211(b), "[e]ach designated company shall provide and pay for all administrative, informational, and counselling services with respect to the annuity contracts offered by the designated company."

This section also contemplates that the employing institution may need to call upon the vendor to resolve problems, because it imposes on each designated company a duty to "cooperate with the employing institution in connection with any concerns that relate to enrollment, termination, or retirement of a participating employee." SPP §30-211(c). The statute thus directs the employing institution and the vendor to work together to resolve particular problems.

For example, the designated companies will be performing a variety of tax calculations with respect to the tax-deferred status of employer or employee contributions to the program.[5] Indeed, these responsibilities are part of each company's contractual obligation to the Retirement Agency. In carrying out its authority to prescribe the "form and contents" of the contract, the Board of Trustees requires each contractor to "[a]gree to administer the tax sheltered annuities in a manner consistent with the applicable requirements of the Internal Revenue Service to the end that the Optional Retirement

---

[4] "Employee contributions" are recognized by the statute, *see* SPP §30-205(b)(1), but not otherwise discussed in it.

[5] This opinion does not attempt to assess the tax considerations affecting the ORP. We do note, however, that ORP contributions must comply with I.R.C. §§403(b)(2) (maximum exclusion allowance for §403(b) contracts); 415 (limitations on contributions to certain retirement plans); and 402(g) (overall dollar limit on annual elective deferrals under §403(b) and §401(k) arrangements).

Program constitutes a tax qualified plan." Contract §11.1(i).[6] Should a vendor's failure to carry out its contractual undertaking result in a claim against the State, the vendor is obliged to "hold harmless and indemnify the State, the Board of Trustees, employing institutions, and the officers, agents, and employees of the State, the Board of Trustees, and employing institutions ...." SPP §30-212.

As both a practical and legal matter, then, the institutions need not check every tax calculation for accuracy or participate in every meeting between a company's sales representative and prospective participant. The institutions are entitled to reasonable assurances from the designated companies that the work is being performed in a professional manner, as required by the contracts. If any problems cannot be resolved informally, the institution should bring the matter to the attention of the Retirement Agency, which can consider its remedies under the contract.

---

[6] Another provision of the contract, §10.1(b), provides as follows:

(Contractor) agrees to perform the maximum exclusion allowance calculation for each participant each year in accordance with the provisions of the Internal Revenue Code and in the manner it specified in the Technical Proposal it submitted in response to the RFP. The Contractor agrees to make a good faith effort to ensure that all contributions are reported to it for purposes of the maximum exclusion allowance calculation by notifying participants about the necessity for making the calculation. Further, it agrees to indemnify a participant to the extent of any penalty and/or interest assessed with respect to past due taxes which may be related to the Contractor's failure to correctly compute the participant's Maximum Exclusion Allowance (provided however, it shall not be liable for indemnification as to any errors in the computation of the allowance which result from incorrect information supplied to the Contractor from a participant).

We understand that the Retirement Agency's contract with TIAA/CREF has not yet been executed, although that formality is expected shortly. The TIAA/CREF contract will contain the same provisions.

### III

### The Role of the Central Payroll Bureau

#### A.    *Duty to Implement*

Your question about the Comptroller's duty to "implement the expansion of Optional Retirement Program at a specific time" in the face of perceived "sponsorship" uncertainties has been addressed by our answer to the first question.  The responsibilities allocated by statute and contract reflect a legally sufficient regime for compliance with the I.R.C.

Under this scheme, Central Payroll Bureau acts in its customary role as the paymaster of State wages and tax reporting requirements.  *See* SPP §6-401.  It is directed to make the payments to the designated companies.  SPP §30-205(e).   If Central Payroll has doubts about the accuracy of the tax status reporting associated with a deduction, it should request verification from the employing institution, which in turn would seek the necessary information from the appropriate vendor.  If verification is not forthcoming, Central Payroll can report any contributions as taxable, rather than pre-tax, income on the employee's annual W-2 form.  If need be, Central Payroll may place disputed or questioned amounts in escrow pending adequate instructions.  We see no reason, therefore, that Central Payroll cannot implement its role in this program.

#### B.    *Reimbursement*

SPP §30-209 establishes an expense fund to cover the State costs of the ORP.  The fund is under the control of the Board of Trustees of the Retirement Systems.   The Board of Trustees estimates the annual "administrative and operational expenses of the program" and collects those costs from the designated companies.  SPP §30-209(b).  Appropriation of money out of the expense fund will occur in the annual budget bill.  SPP §30-209(a).

The section establishing and regulating the expense fund does not restrict expenditures out of the fund to those incurred by the Retirement Agency. Rather, a number of different entities can incur costs for this program; all can be reimbursed, so long as the necessary appropriations are included in the State budget.[7] Under this mechanism, Central Payroll is entitled to reimbursement for its expenses incurred for support of the ORP.

## IV

### Release of Employee Information

Under the Maryland Public Information Act, the retirement and personnel records of an individual generally are confidential and therefore may not be released by the custodian of the record. §10-616(g)(1) and (i) of the State Government ("SG") Article, Maryland Code. Similarly, as a general rule, the home address and telephone number of a public employee may not be disclosed. SG §10-617(e)(1). These general prohibitions are subject to certain exceptions;[8] however, none of the exceptions allows disclosure of the confidential information to the designated vendors by the Retirement Agency, Central Payroll, or the employing institutions. Nor does any provision in SPP Title 30 create an additional exception to these prohibitions.

Of course, if an eligible employee consents to the release of information, the Agency, Central Payroll, or the employing institution may release it to a designated vendor. When eligible employees were able to select only one vendor, prior to implementation of Chapter 428 of the Laws of Maryland 1993, the employing institutions released employee information to the sole vendor on receipt of the employee's application to enroll in the ORP.

---

[7] Thus, for example, if an employing institution bears added administrative costs attributable to the ORP, these costs might also be reimbursed.

[8] For example, SG §10-616(g)(2)-(5) allows inspection of retirement records by selected parties other than ORP vendors. SG §10-616(g)(6) allows disclosure of limited retirement information regarding elected and appointed officials.

An employee whose deductions go to more than one vendor would necessarily consent to disclosure to those vendors.

With the addition of new vendors to the ORP, the statutory objective "to enhance competition by adding additional vendors to the Optional Retirement Program"[9] would be furthered if these vendors had an effective way of reaching eligible employees with information about the products on offer prior to the employees' enrollment in the ORP. Nevertheless, this objective can be pursued only within the confines of the Public Information Act. Perhaps consent to disclosure of certain information could be solicited, or employing institutions could provide office addresses for the employees.[10]


# V

## Employee Eligibility

The criteria for an "eligible employee" are set out in SPP §30-301:

> An individual is eligible to participate in the program if the individual is eligible for membership in a retirement system or pension system and is:
>
> (1) a member of the faculty of an employing institution;

---

[9] Joint Committee on Pensions, *Report of the 1993 Interim* 3 (December 1993).

[10] In addition, nothing would preclude the Agency or Central Payroll from directly mailing informational materials to the homes of eligible employees at the vendors' expense. Moreover, in the past, the Board of Trustees has provided mail solicitation assistance to the United Charity campaign and the Comptroller's office. Given that the employing institutions have been solely charged with the administration of enrollment, however, such an action falls clearly outside the scope of the Agency's or Central Payroll's statutory duty.

(2) a professional employee at any community college or regional community college established under Title 16 of the Education Article;

(3) an employee of the University of Maryland System who is not in a position designated to be treated in the same manner as a classified service employee under §12-111 of the Education Article;

(4) an employee of Morgan State University who is not subject to the provisions of the State Personnel Article that govern classified service; or

(5) an employee of St. Mary's College of Maryland who is in a position determined by the Board of Trustees of the College to be a professional or faculty position.

These eligibility criteria represent a clarification of the previous law, contained in former Article 73B, §110(b)(2), updated to reflect changes in the names and organization of various State higher education institutions, as well as the demise of the State Board of Community Colleges. There is no indication that the 1993 revisions were intended either to expand or reduce the pool of employees who could elect to participate in the ORP. That eligibility remains principally with the faculty, administrative and professional (*i.e.*, non-classified) personnel of the University of Maryland System, Morgan State University, St. Mary's College of Maryland, and the various community colleges and regional community colleges.

Since these employment classifications are established for all positions, as numerous employment regulations and benefits are dependent upon classification, the employing institutions automatically offer participation in the ORP to any new employee who falls within the designated classifications. Eligible employees then may elect to participate in the ORP; in the absence of such an election, the employees participate in the employee's Pension System or the Teachers' Pension System. Conversely, one who is

not eligible for membership in a pension system is not eligible for participation in the ORP.[11]

An election to participate in the ORP waives rights and benefits under the Retirement or Pension System and substitutes the right to a State contribution to the designated vendor. Under SPP §30-101(f), it is this election that makes an eligible employee a participant in the ORP.

Under SPP §30-205(b), only participants in the ORP make additional, voluntary salary contributions. As we interpret this provision, once an eligible employee elects to participate in the State contributory portion of the ORP (in lieu of Retirement or Pension System participation), the employee may then make additional salary reduction contributions. If, however, an employee has not made this election, the employee is not authorized by the ORP statute to make such voluntary salary reduction contributions to the designated vendors.

## VI

### Conclusion

The ORP is a difficult program to implement. It has a long history during which certain practices developed, and yet it now faces a dramatic transformation. This change, wrenching to some, takes place against a background of tax complexity with few rivals even among the arcana of the Internal Revenue Code.

---

[11] We are not here discussing an employee's opportunity under other law to participate in a separate annuity program. For an example of such an alternative program, see letter of advice to Senator Laurence Levitan from Assistant Attorney General Kathryn M. Rowe (March 29, 1994). Nothing in SPP Title 30 or in this opinion changes the way in which an authorized, non-ORP annuity program operates. Nor can this opinion appropriately address any policy issues that might arise from the current operation of annuity programs outside the ORP.

Yet, as we have explained, a sufficient framework now exists for the expanded ORP to get underway. If the experience implementing the new ORP suggests the need for more administrative detail, that need can be met through the rulemaking authority of the Board of Trustees.


J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz*
*Chief Counsel*
 *Opinions & Advice*


*Assistant Attorneys General John K. Barry, Harriet B. Granet, and Elena Langrill contributed to the preparation of this opinion.